# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**GREG M. WERNER**
**903 Aspen Drive,**
**Mountain Top, PA 18707**

        **PLAINTIFF,**
**V.**

**JACOB J. HORTON**
**27 Corey Road,**
**Flanders, NJ 07836,**

**PRINCIPLE MERCHANTS**
**LEASING LTD.**
**14 Central Park Drive, Floor 1**
**Hooksett, NH 03106,**

**AMAZON LOGISTICS, INC.,**
**410 Terry Avenue N,**
**Seattle, WA, 98126,**

**AMAZON.COM, INC.,**
**410 Terry Avenue N,**
**Seattle, WA, 98126**
        **And**

**AMAZON.COM SERVICES, LLC,**
**410 Terry Avenue N,**
**Seattle, WA, 98126**

      **DEFENDANTS.**

**CIVIL ACTION - LAW**

**JURY TRIAL DEMANDED**

**NO.:**

## COMPLAINT

AND NOW comes the Plaintiff, Greg M. Werner, by and through his legal counsel, Fellerman & Ciarimboli Law, P.C. to hereby complain against the above-named Defendants, Jacob H. Horton, Principle Merchants Leasing Ltd., Amazon Logistics, Inc., Amazon.com, Inc., and Amazon.com Services, LLC, and in support thereof, avers as follows:

## PARTIES

1.     Plaintiff, Gary M. Werner ("Plaintiff") is a competent, adult individual who resides at 903 Aspen Drive, Mountain Top, Pennsylvania 18707.

2.     Defendant, Jacob J. Horton ("Mr. Horton") upon information and belief, is a competent, adult individual who resides at 27 Corey Road, Flanders, NJ 07836.

3.     Principle Merchants Leasing LTD ("Defendant Merchants") is a company that regularly and systematically conducts business in the Commonwealth of Pennsylvania, Monroe County, with its principal place of business and/or headquarters at 14 Central Park Drive, Floor 1, Hooksett, New Hampshire 03106.

4.     Defendant Amazon Logistics, Inc. is a corporation that regularly and systematically conducts business, including but not limited to motor carrier

transportation, in the Commonwealth of Pennsylvania, Monroe County with its principal place of business and/or headquarters at 410 Terry Avenue N, Seattle, Washington 98126.

5.     Defendant Amazon Logistics, Inc. is registered as a motor carrier common carrier and a motor carrier contract carrier with the Department of Transportation Federal Motor Carrier Safety Administration under USDOT# 2881058, MC# MC-826094.

6.     Defendant Amazon.com, Inc. is a corporation incorporated under the laws of the State of Delaware that regularly and systematically conducts business, including but not limited to motor carrier transportation, in the Commonwealth of Pennsylvania. Defendant Amazon.com, Inc. has a principal place of business and/or headquarters at 410 Terry Avenue N, Seattle, Washington 98126 and may be served through its registered agent for service of process, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

7.     Upon information and belief, Defendant Amazon.com Services, LLC is a wholly owned subsidiary of Defendant Amazon.com, Inc. and a subsidiary, sister entity, or affiliate of Amazon Logistics, Inc. with its principal place of business at 410 Terry Avenue N, Seattle, Washington 98126.

8.     Defendant Amazon.com Services, LLC, has distribution centers, warehouses and storage facilities throughout Pennsylvania.

9.     Defendants Amazon Logistics, Inc., Amazon.com, Inc., and Amazon.com Services, LLC shall hereinafter be referred to collectively as "Amazon Defendants."

10.     The Amazon Defendants and Defendant Merchants will be referred to collectively herein as "Defendants."

11.     At all times relevant hereto, Mr. Horton was employed and/or contracted to perform services for the Amazon Defendants under the Amazon Defendants' operating authority and was subject to Defendants' control or right to control, such that the Amazon Defendants should be considered his actual and statutory employer and therefore vicariously liable for Mr. Horton's negligence.

12.     As part of a strategy to vertically integrate and take control of shipping and logistics away from third parties, the Amazon Defendants have been building, refining, expanding, and using their own logistics and transportation network to transport goods from manufacturers and retailers to its warehouses, distribution centers, and ultimately to customers throughout the country, including Pennsylvania.

13.     As part of this integration, the Amazon Defendants routinely enter into contracts with shippers, transportation companies, interstate motor carriers, intrastate carriers, and local delivery partners to ensure that items purchased by the customers are picked up from the shippers and timely delivered to the customers.

14.    Upon information and belief, to save money on deliveries, the Amazon Defendants have engaged in a "race to the bottom" within the trucking and transportation industries to minimize its rates of compensation for drivers, resulting in a practice of hiring incompetent and unsafe drivers who will work for less than competent drivers.

15.    Upon information and belief, the Amazon Defendants do not conduct a safety investigation into the motor carriers it contracts with beyond verifying current operating authority, proof of insurance, and that the motor carrier does not have a safety rating of "unsatisfactory."

16.    At all times relevant hereto, upon information and belief, the vehicle Mr. Horton was driving at the time of the crash was owned by Defendant Merchants, was being leased to the Amazon Defendants for the purpose of delivering goods, and was being operated by Mr. Horton with the consent of Defendant Merchants and the Amazon Defendants for the benefit of all Defendants.

17.    Defendant Merchants had an obligation to ensure it leased its vehicles to individuals and/or companies that would place competent drivers behind the wheel of its vehicles.

18.    At all times relevant hereto, the Amazon Defendants were authorized interstate motor carriers authorized to transport goods in interstate commerce and

in the Commonwealth of Pennsylvania pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation ("USDOT"), or both. Accordingly, Defendants were subject to all state and federal laws, statutes regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation the Pennsylvania Motor Vehicle Code and the Federal Motor Carrier Safety Regulations ("FMCSR") subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

19.    Each company, in order to obtain a DOT number, had to submit an OP-1 form containing a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that company has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that the company will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

20.    More specifically, each Form OP-1 submitted contained a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, the Amazon Defendants:

  a. had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

b.  can produce a copy of the FMCSRs;

c.  had and will have in place a driver safety training/orientation program;

d.  had and will have prepared and maintain an accident register;

e.  is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

f.  had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

g.  is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

h.  must comply with all pertinent Federal, State, local and tribunal statutory and regulatory requirements when operating within the United States.

21.     Representatives of the Amazon Defendants swore under the penalty of perjury to comply with the above "Safety Certifications."

22.     Defendants are personally liable, jointly and severely, in partnership, joint venture or sole proprietorship for the crash and resulting permanent injuries and damages suffered by Plaintiff, claimed herein.

23.     Each Defendant acted in a manner that either alone or combined and occurring with the actions of other Defendants' acts of negligence, directly and proximately caused the incident and the resulting injuries suffered by the Plaintiff.

24.     At all relevant times hereto, Mr. Horton was the agent, servant, workman, and/or employee of the Amazon Defendants.

25.     Upon information and belief, a motor carrier that partners with Amazon is required to use Amazon Relay and/or Amazon Flex, which are applications that enable carriers to self-register with Amazon and find, book, and deliver Amazon loads.

26.     Through the Load Board in Amazon Relay, drivers and carriers can search for assignments in their area and book them.

27.     Through Amazon Flex, drivers are able to find delivery routes to complete on behalf of the Amazon Defendants.

28.     Motor carriers can access a Driver Roster and view Amazon's grading of each driver's performance.

29.     The assignments on the load board inside Amazon relay are preset by Amazon to include details including the departure time and location for the trip,

arrival, and departure time for each stop along the way, and the required arrival time at the final destination.

30.   Motor carriers and drivers working for Amazon do not negotiate payment, as the payment amount is preset by Amazon into the Load Board for each assignment.

31.   Once the truck driver is assigned to a delivery in the Amazon Relay phone app, the Amazon Defendants no longer communicate with the motor carrier and all communications are directly with the truck driver himself.

32.   At all relevant times hereto, Mr. Horton was acting in the course and scope of his employment and/or contract.

33.   At all relevant times hereto, Mr. Horton was driving a vehicle owned by Defendant Merchants.

34.   When a motor carrier or driver books a shipment through Amazon Relay/Flex, a map for navigation by the driver is created in the application, dictating the exact route the driver is to follow and identifying each stop with numbers and delivery times on the map.

35.   Drivers also use the Amazon Relay and/or Flex application to report delays and to update their estimated time of arrival.

36.   The Amazon Defendants therefore can and do control and monitor its drivers and the location of their loads through the Amazon Relay app.

37.     Further, upon information and belief, drivers are punished for late deliveries.

38.     Additionally, upon information and belief, drivers are monitored by an application known as the "Mentor" application while driving. The application tracks their speed, their location, and their movements while driving (such as taking a sip of water), and issues violations for unsafe driving.

39.     Upon information and belief, drivers are not actually punished for receiving too many violations, with drivers remaining on the road after dozens of violations have been issued.

40.     As a result, at all relevant times hereto, Defendants had the ability to control the means and methods of Mr. Horton's work, and are thus liable for the actions and/or inactions of Mr. Horton.

41.     At all relevant times, Defendants were liable for the actions and/or inactions of Mr. Horton as though the actions and/or inactions were performed by Defendants themselves.

42.     At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to 67 Pa. Code §23, et. seq.

## JURISDICTION AND VENUE

43.    This Court possesses subject matter jurisdiction over claims set forth herein, pursuant to 28 U.S. Code § 1332, as the controversy is between parties domiciled in different states, and the amount in controversy exceeds $75,000.

44.    Upon information and belief, Defendant Merchants conducts business across the United States, including Pennsylvania, where Merchants contracts with larger companies to provide vehicles for the purpose of transporting goods.

45.    Upon information and belief, Defendant Merchants regularly and systematically conducts business in Pennsylvania, advertises in Pennsylvania, and leases vehicles to customers that regularly travel through and make stops in Pennsylvania.

46.    Defendant Merchants has embraced the benefits of conducting business in Pennsylvania, including, but not limited to, using Pennsylvania roads, advertising in Pennsylvania, contracting with Pennsylvania clients, and utilizing the protection of Pennsylvania courts.

47.    Further, at all relevant times hereto, Defendant Merchants utilized these benefits for the purpose of realizing pecuniary benefit.

48.    As a result, Merchants has purposely availed itself to the laws of Pennsylvania and subjected itself to the laws of Pennsylvania through Pennsylvania's Long Arm Statute, 42 Pa. C.S.A. §5322.

49.   The Amazon Defendants represent parts of an international conglomerate that conduct business in all fifty (50) U.S. States, including Pennsylvania, as well as many countries around the world.

50.   The Amazon Defendants make sales through use of their online platform, Amazon.com, which is accessed daily by residents of Monroe County, Pennsylvania.

51.   The Amazon Defendants regularly and systematically conduct business in Monroe County, Pennsylvania, advertise in Monroe County, Pennsylvania, make deliveries in Monroe County, Pennsylvania, sell to customers in Monroe County, Pennsylvania, and contract with businesses in Pennsylvania.

52.   The Amazon Defendants have embraced the benefits of conducting business in Pennsylvania, including, but not limited to, using Pennsylvania roads, advertising in Pennsylvania, contracting with Pennsylvania clients, owning storage and distribution facilities in Pennsylvania, and utilizing the protection of Pennsylvania courts.

53.   Further, at all relevant times hereto, the Amazon Defendants have utilized these benefits to realize pecuniary gain.

54.   In addition, the acts and omissions that gave rise to this lawsuit occurred in Monroe County, Pennsylvania.

55. This Court possesses personal jurisdiction over the parties pursuant to 18 U.S. Code § 2334.

56. Venue is appropriate in this Court because this Court embraces Monroe County in accordance with 28 U.S. Code § 1441.

## OPERATIVE FACTS COMMON TO ALL COUNTS

57. The motor vehicle crash giving rise to the instant action occurred on September 5, 2023, at approximately 1:07, P.M. on the entrance ramp between mile markers 297 and 298 of Interstate 80 East ("I-80 East").

58. On the aforesaid date, place and time, Plaintiff was traveling eastbound on the entrance ramp to I-80 East while operating a Green 2022 Toyota Tacoma bearing the license plate number DVBTOG ("Toyota").

59. At the same time and place, Mr. Horton was traveling behind Plaintiff's Tacoma heading eastbound on the entrance ramp to I-80 East while operating a White 2021 Ford Transit Van bearing Florida license plate number 56AUXR ("Van").

60. On the aforementioned date, place, and time, Plaintiff was waiting at the edge of the entrance ramp to safely merge onto I-80 East when, suddenly and without warning, he was violently rear-ended by the Van driven by Mr. Horton, causing Plaintiff's face to slam off the steering wheel ("Crash").

61.     According to the police investigation, Mr. Horton was charged with following too closely behind Plaintiff in addition to other improper driving actions, which resulted in the Crash.

62.     The Crash was caused by the negligence, recklessness, and carelessness of Mr. Horton in the operation of his motor vehicle.

63.     At all times material hereto, Plaintiff was free from any negligence and did not in any manner cause or assume the risk of injury and/or collision.

64.     As a direct result of the Crash, Plaintiff sustained, *inter alia*, the following injuries:

    a.  Severe concussion with;

        i.   Headaches;

        ii.  Confusion;

        iii. Memory loss;

        iv.  Blurred vision;

        v.   Light Sensitivity;

        vi.  Dizziness;

        vii. Loss of balance;

        viii. Nausea;

        ix.  Trouble focusing;

        x.   Speech problems; and

xi.  Decreased cognitive function ("brain fog").

b.  Post-Concussive Syndrome;

c.  Fractured nose;

d.  Neck sprain;

e.  Left shoulder pain;

f.  Right shoulder pain;

g.  Inability to work and otherwise function as he did pre-Crash;

h.  Anxiety;

i.  Depression; and

j.  All other injuries and damages naturally resulting from the above injuries.

65.    As result of the aforementioned injuries and the natural consequences thereof, Plaintiff, at the time of this Complaint, has required treatment from at least the following providers:

a.  Lehigh Valley Hospital - Pocono;

b.  Wilkes Barre VA Medical Center; and

c.  John Heinz Institute of Rehab Medicine;

66.    As a result of the aforesaid injuries and the natural consequences thereof, Plaintiff has sustained physical and mental suffering, all of which has required or will require medical treatment and care.

67.     As a result of the aforesaid injuries and the natural consequences thereof, Plaintiff has been obligated to miss work and will continue to incur significant loss related to his future loss of earning power.

68.     As a result of the aforesaid injuries and the natural consequences thereof, Plaintiff has been obligated to expend various sums of money and incur various expenses for medical treatment and will be obligated to do so into the future.

69.     As a result of the aforesaid injuries and the natural consequences thereof, Plaintiff has suffered physical and mental discomfort, inconvenience, anxiety, and limitations on his ability to do normal everyday activities and will continue to suffer into the future.

70.     As a result of the aforesaid injuries and the natural consequences thereof, Plaintiff has endured significant pain and suffering from injuries which are likely to cause significant pain, soreness, limitation, and discomfort into the future.

**COUNT I**
**NEGLIGENCE/RECKLESSNESS**
**GREG M. WERNER v. JACOB J. HORTON**

71.     The preceding paragraphs are incorporated herein as if fully set forth below.

72.     The negligence, carelessness and/or recklessness of Defendant Jacob J. Horton, consisted of, but is not limited to, the following:

a. Failing to maintain proper and adequate control of the Van so as to avoid crashing into Plaintiff;

b. Driving carelessly in violation of 75 Pa. C.S.A. §3714;

c. Failing to pay proper attention while operating the Van on I-80 East;

d. Failing to take proper precautions in the operation of the Van so as to avoid the collision that occurred with the Toyota being operated by Plaintiff;

e. Operating the Van in a negligent, careless and reckless manner without due regard for the rights and safety of Plaintiff;

f. Failing to exercise due care and caution under all of the existing circumstances;

g. Failing to remain alert;

h. Traveling at an unreasonable rate of speed under the circumstances;

i. Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of motor vehicles and/or trucks;

j. Failing to operate the Van in accordance with the Federal Motor Carrier Safety Regulations;

k. Failing to properly control the Van in light of the circumstances then and there existing on the roadway;

l.  Failing to make necessary and reasonable observations while operating the Van;

m. Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid Plaintiff's vehicle;

n.  Failing to pay proper attention while attempting to enter I-80 East;

o.  Violating FMCSA Regulation 383 dealing with required knowledge and skills;

p.  Consciously choosing not to yield while attempting to enter I-80 East;

q.  Consciously choosing to ignore the rules of the road and the Federal Motor Carrier Safety Regulations;

r.  Failing to perform proper pre-trip inspection;

s.  Violating both the written and unwritten policies, rules, guidelines and regulations of the Amazon Defendants;

t.  Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

u.  Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

v.  Violating FMCSA Regulation 395 dealing with hours of service;

w. Failing to adhere to the amount of driving hours limit;

x. Striking Plaintiff's vehicle due to being on the road for more than the regulated amount of hours;

y. Consciously choosing to drive over the regulated amount of hours;

z. Acting with a conscious disregard for the rights and safety of Plaintiff;

aa. Failing to act upon and remedy violations of FMCSA regulation 383; and

bb. Failing to pass a post-crash drug and alcohol test.

73.   As a result of the negligence and/or recklessness of Mr. Horton, Plaintiff suffered the abovementioned severe and permanent injuries, and will continue suffering as a result of those injuries for the foreseeable future.

**WHEREFORE**, the Plaintiff, Greg M. Werner, hereby seeks all damages allowed under the relevant laws of the Commonwealth of Pennsylvania and relevant federal laws of the United States of America from Defendant Jacob J. Horton in an amount in excess of $75,000.00 under the U.S. Code and the Federal Rules of Court.

**COUNT II**
**NEGLIGENCE/RECKLESSNESS**
**GREG M. WERNER v. AMAZON LOGISTICS, INC., AMAZON.COM, INC., and AMAZON.COM SERVICES, LLC as being vicariously liable for JACOB J. HORTON**

74.    The proceeding paragraphs are incorporated herein as if fully set forth below.

75.    The negligence, carelessness and/or recklessness of The Amazon Defendants, as being vicariously liable for Jacob J. Horton, consisted of, but is not limited to, the following:

a.  Failing to maintain proper and adequate control of the Van so as to avoid crashing into Plaintiff;

b.  Driving carelessly in violation of 75 Pa. C.S.A. §3714;

c.  Failing to pay proper attention while operating the Van on I-80 East;

d.  Failing to take proper precautions in the operation of the Van so as to avoid the collision that occurred with the Toyota being operated by Plaintiff;

e.  Operating the Van in a negligent, careless and reckless manner without due regard for the rights and safety of Plaintiff;

f.  Failing to exercise due care and caution under all of the existing circumstances;

g.  Failing to remain alert;

h.  Traveling at an unreasonable rate of speed under the circumstances;

i.  Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of motor vehicles and/or trucks;

j.  Failing to operate the Van in accordance with the Federal Motor Carrier Safety Regulations;

k.  Failing to properly control the Van in light of the circumstances then and there existing on the roadway;

l.  Failing to make necessary and reasonable observations while operating the Van;

m.  Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid Plaintiff's vehicle;

n.  Failing to pay proper attention while attempting to enter I-80 East;

o.  Violating FMCSA Regulation 383 dealing with required knowledge and skills;

p.  Consciously choosing not to yield while attempting to enter I-80 East;

q.  Consciously choosing to ignore the rules of the road and the Federal Motor Carrier Safety Regulations;

r.  Failing to perform proper pre-trip inspection;

s.  Violating both the written and unwritten policies, rules, guidelines and regulations of the Amazon Defendants;

t.  Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

u.  Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

v.  Violating FMCSA Regulation 395 dealing with hours of service;

w.  Failing to adhere to the amount of driving hours limit;

x.  Striking Plaintiff's vehicle due to being on the road for more than the regulated amount of hours;

y.  Consciously choosing to drive over the regulated amount of hours;

z.  Acting with a conscious disregard for the rights and safety of Plaintiff;

aa.  Failing to act upon and remedy violations of FMCSA regulation 383; and

bb.  Failing to pass a post-crash drug and alcohol test.

76.   As a result of the negligence and/or recklessness of the Amazon Defendants, Plaintiff suffered the abovementioned severe and permanent injuries, and will continue suffering as a result of those injuries for the foreseeable future.

**WHEREFORE**, the Plaintiff, Greg M. Werner, hereby seeks all damages allowed under the relevant laws of the Commonwealth of Pennsylvania and relevant federal laws of the United States of America from the Amazon Defendants in an amount in excess of $75,000.00 under the U.S. Code and the Federal Rules of Court.

**COUNT III**
**NEGLIGENCE/RECKLESSNESS**
**GREG M. WERNER v. PRINCIPLE MERCHANTS LEASING LTD. as being vicariously liable for JACOB J. HORTON**

77.     The proceeding paragraphs are incorporated herein as if fully set forth below.

78.     The negligence, carelessness and/or recklessness of Defendant Merchants, as being vicariously liable for Jacob J. Horton, consisted of, but is not limited to, the following:

a.   Failing to maintain proper and adequate control of the Van so as to avoid crashing into Plaintiff;

b.   Driving carelessly in violation of 75 Pa. C.S.A. §3714;

c.   Failing to pay proper attention while operating the Van on I-80 East;

d.   Failing to take proper precautions in the operation of the Van so as to avoid the collision that occurred with the Toyota being operated by Plaintiff;

e.  Operating the Van in a negligent, careless and reckless manner without due regard for the rights and safety of Plaintiff;

f.  Failing to exercise due care and caution under all of the existing circumstances;

g.  Failing to remain alert;

h.  Traveling at an unreasonable rate of speed under the circumstances;

i.  Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of motor vehicles and/or trucks;

j.  Failing to operate the Van in accordance with the Federal Motor Carrier Safety Regulations;

k.  Failing to properly control the Van in light of the circumstances then and there existing on the roadway;

l.  Failing to make necessary and reasonable observations while operating the Van;

m.  Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid Plaintiff's vehicle;

n.  Failing to pay proper attention while attempting to enter I-80 East;

o.  Violating FMCSA Regulation 383 dealing with required knowledge and skills;

p.  Consciously choosing not to yield while attempting to enter I-80 East;

q.  Consciously choosing to ignore the rules of the road and the Federal Motor Carrier Safety Regulations;

r.  Failing to perform proper pre-trip inspection;

s.  Violating both the written and unwritten policies, rules, guidelines and regulations of Defendant Merchants;

t.  Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

u.  Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

v.  Violating FMCSA Regulation 395 dealing with hours of service;

w.  Failing to adhere to the amount of driving hours limit;

x.  Striking Plaintiff's vehicle due to being on the road for more than the regulated amount of hours;

y.  Consciously choosing to drive over the regulated amount of hours;

z.  Acting with a conscious disregard for the rights and safety of Plaintiff;

aa.  Failing to act upon and remedy violations of FMCSA regulation 383; and

bb.  Failing to pass a post-crash drug and alcohol test.

79.    As a result of the negligence and/or recklessness of Defendant Merchants, Plaintiff suffered the abovementioned severe and permanent injuries, and will continue suffering as a result of those injuries for the foreseeable future.

**WHEREFORE**, the Plaintiff, Greg M. Werner, hereby seeks all damages allowed under the relevant laws of the Commonwealth of Pennsylvania and relevant federal laws of the United States of America from Defendant Merchants in an amount in excess of $75,000.00 under the U.S. Code and the Federal Rules of Court.

<u>**COUNT IV**</u>
<u>**NEGLIGENT ENTRUSTMENT**</u>
<u>**GREG M. WERNER v. PRINCIPLE MERCHANTS LEASING LTD.**</u>

80.    The preceding paragraphs are incorporated herein as if fully set forth below.

81.    Defendant Merchants entrusted the Van to Mr. Horton despite the fact that Mr. Horton failed to possess the knowledge, skill, experience, available equipment and personal characteristics to operate the Van.

82.     Defendant Merchants knew or should have known that Horton failed to possess the knowledge, skill, experience, available equipment and personal characteristics to operate the Van without creating an unreasonable risk of injury to others.

83.     Because Defendant Merchants entrusted the Van to an incompetent driver, Defendant Merchants is liable for any negligent and/or reckless conduct of Mr. Horton.

84.     Defendant Merchants was negligent in entrusting the Van to Mr. Horton, when it knew or in the exercise of reasonable care should have known that Mr. Horton lacked the necessary skill, judgment, and/or prudence with which to operate the vehicle.

85.     Defendant Merchants was negligent and/or reckless in entrusting the Van to Mr. Horton, when it knew or in the exercise of reasonable care should have known that Mr. Horton had a propensity to cause motor vehicle collisions.

86.     Defendant Merchants was negligent in entrusting the Van to Mr. Horton when it knew or in the exercise of reasonable care should have known that Mr. Horton had a propensity to violate the motor vehicle code.

87.     At all relevant times, Defendant Merchants had a duty to ensure that it had appropriate leasing practices that put competent drivers behind the wheel.

88.    At all relevant times, Defendant Merchants had a duty to ensure that it had appropriate policies in place to ensure that drivers of their vehicles did not violate FMCSA regulation 395 "hours of service" and/or regulation 383 "required knowledge and skill."

89.    Defendant Merchants knew or in the exercise of reasonable care should have known that entrusting the Van to Mr. Horton would likely cause harm to the motoring public such as the harm that was caused on September 5, 2023 to Plaintiff.

90.    Defendant Merchants had a duty to entrust the Van to an attentive and skilled driver.

91.    Defendant Merchants had an obligation / duty to entrust the Van to drivers who operate their vehicles in a safe manner.

92.    Plaintiff was injured as a result of Mr. Horton's unsafe driving.

93.    By entrusting the Van to Mr. Horton, Defendant Merchants acted in conscious disregard of the rights and safety of Plaintiff.

94.    As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE**, the Plaintiff, Greg M. Werner, hereby seeks all damages allowed under the relevant laws of the Commonwealth of Pennsylvania and relevant federal laws of the United States of America from Defendant Merchants in

an amount in excess of $75,000.00 under the U.S. Code and the Federal Rules of Court.

## COUNT V
## NEGLIGENT HIRING/SUPERVISION/RETENTION
## GREG M. WERNER V. AMAZON LOGISTICS, INC., AMAZON.COM, INC. and AMAZON.COM SERVICES, LLC

95.    The preceding paragraphs are incorporated herein as if fully set forth below.

96.    The Amazon Defendants had an obligation/duty to hire, retain and supervise drivers who operate vehicles in a safe manner.

97.    Plaintiff was injured as a result of an incident related to Mr. Horton's driving, more specifically, Mr. Hortons's unsafe driving.

98.    The negligence, carelessness, and/or recklessness of The Amazon Defendants, individually and through its various employees, servants, agents and/or workers including Mr. Horton, consisted of the following:

      a.    Failing to properly train, monitor and/or supervise its employees, drivers and/or agents including Mr. Horton;

      b.    Failing to train and/or properly train Mr. Horton prior to allowing him to operate the Van;

      c.    Hiring and/or continuing to employ Mr. Horton despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

      d.    Hiring and/or continuing to employ Mr. Horton despite the fact that he had a propensity for driving violations;

e.     Hiring and/or continuing to employ Mr. Horton despite the fact that he had a propensity for violating "Rules of the Road" and FMCSR;

f.     Failing to perform alcohol and/or drug tests after the crash;

g.     Failing to do preventable analysis as recommended by the FMCSR;

h.     Failing to have an appropriate disciplinary policy within the company;

i.     Hiring and/or continuing to employ Mr. Horton despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

j.     Permitting Mr. Horton to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

k.     Failing to train and/or properly train Mr. Horton prior to allowing him to operate the Van;

l.     Allowing Mr. Horton to operate the Van when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

m.     Failing to adopt appropriate employee manuals and/or training procedures;

n.     Failing to enforce both written and unwritten policies of the Amazon Defendants;

o.     Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of the Amazon Defendants;

p.     Failing to implement and/or enforce an effective safety system, as required by OP-1 agreement that the Amazon Defendants executed with the DOT;

q.     Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

r.     Failing to ensure that is employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

s.     Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

t.     Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

u.     Failing to monitor and/or regulate its drivers' actions;

v.     Failing to do annual reviews as required by the FMCSR;

w.     Failing to monitor and/or regulate its drivers' hours;

x.     Failing to have an auditing system in place to audit its drivers' logs, or if they did have a system in place, failing to use it appropriately;

y.     Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

z.     Failing to have policy or mechanism in place to address cumulative fatigue in its drivers;

aa.    Placing more emphasis on profits than on safety of its drivers and the motor public;

bb.    Failing to maintain an accident register in accordance with the FMCSR;

cc.   Knowingly violating federal and state law regarding the responsibilities of motor carries and the operation of commercial vehicles;

dd.   Failing to act upon and remedy violations of FMCSA regulation 395;

ee.   Failing to act upon and remedy violations of FMCS regulation 383;

ff.   Failing to act upon and remedy known violations of industry standards;

gg.   Acting in conscious disregard for the rights and safety of the Plaintiff;

hh.   Failing to have appropriate policies and procedures with regard to the hiring of its drivers;

ii.   Failing to follow the written and/or unwritten policies and procedures with regard to the hiring of its drivers;

jj.   Failing to have appropriate policies and procedures with regard to the monitoring of its drivers;

kk.   Failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers; and

ll.   Consciously disregarding federal and state law regarding the responsibilities of motor carries and the operation of commercial vehicles.

99.   As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE**, the Plaintiff, Greg M. Werner, hereby seeks all damages allowed under the relevant laws of the Commonwealth of Pennsylvania and

relevant federal laws of the United States of America from the Amazon Defendants in an amount in excess of $75,000.00 under the U.S. Code and the Federal Rules of Court.

Respectfully submitted,

**FELLERMAN & CIARIMBOLI LAW, P.C.**

BY: _____
MOLLY DEMPSEY CLARK, ESQUIRE
Attorney for the Plaintiffs

Date: February 12, 2024